FORDYCE AND SWANSON, RECEIVERS, ETC., V. GEORGE MANUEL.

No. 3419.

1. **Railway Companies Must Afford Opportunity to Buy Tickets.**—Article 4258b, section 9, Sayles Civil Statutes, is not complied with by the mere keeping open of the ticket office for half an hour prior to the departure of the train. There must be in the office an agent to furnish and sell tickets to persons desiring to buy.

2. **Same.**—Unless such agent is kept at the ticket office, and if a passenger, after applying at the office and not being able to get a ticket, enters a car, he can not be charged in excess of 3 cents a mile. The conductor has no right to exact more, and to put the passenger off the train for refusing to pay more, is unlawful.

3. **Verdict Not Excessive.**—The passenger unable to get a ticket at the office, no agent being there, embarked upon the train. He tendered 3 cents a mile, and for refusing to pay more was put off in the night time when it was raining, and six and a half miles from his destination. *Held,* that a verdict for $200 damages was not excessive.

APPEAL from Titus. Tried below before Hon. JOHN L. SHEPPARD. The opinion states the case.

*Todd & Hudgins,* for appellants.—1. The ticket office being continuously open, passengers are not relieved from the duty of procuring tickets or paying 4 cents per mile because the agent at a small way station is momentarily absent from the office, after arrival of the train, attending to his other duties of transferring baggage and express matter on such train. Particularly is this the case where the passenger is subsequently afforded ample opportunity to procure his ticket before the departure of the train. Sayles' Civ. Stats., art. 4258b, sec. 9; Easton v. Waters, 16 S. W. Rep., 540.

2. Appellee, having failed to procure a ticket, and refusing to pay the conductor 4 cents per mile, was properly required to leave the train. Sayles' Civ. Stats., art. 4258b, sec. 9.

3. If appellants were liable, $200 is an excessive amount for appellee to recover in this case.

*R. D. Hart,* for appellee.

HOBBY, PRESIDING JUDGE, *Section A.*—This suit originated in a Justice Court of Titus County. It was brought by the appellee, George Manuel, against the appellants, to recover damages for being wrongfully ejected from appellants' passenger train. There was a recovery of $200 had in the Justice Court. Upon appeal to the District Court a like judgment was recovered by the plaintiff, from which this appeal is prosecuted.

Plaintiff alleged "that he was a passenger on the train of appellants from Mt. Pleasant to Cookville, a distance of eight miles; that he was

unable to procure a ticket at Mt. Pleasant, because when he applied for the same upon the arrival of his train there was no one in the office to sell it to him; that the regular price of a ticket was 25 cents; that the conductor demanded 30 cents, which he refused to pay, but tendered 25 cents; whereupon the train was stopped and plaintiff was ejected, in the presence of other passengers, in a rude manner, about six and one-half miles from his destination."

Defendants answered with general denial, and averred that their ticket office was open more than three hours prior to the departure of the train, and further alleged that if the ticket agent was at any time absent from his office, it was only for a short time after the arrival of the train while he was attending to the transfer of baggage and express matter, and that plaintiff did have ample opportunity to procure his ticket before the departure of the train.

The errors assigned are in substance:

1. The judgment was against the evidence, in that the evidence shows that appellants' ticket office was kept open half an hour prior to the departure of the train.

2. The judgment was against the evidence, in that the evidence shows convincingly that appellee had ample opportunity to purchase his ticket before the departure of the train and failed to do so, and for this reason the evidence was insufficient to support the judgment.

3. The judgment was excessive in amount.

It appears from the plaintiff's testimony, that on the 29th of April, 1890, he purchased a ticket from "Mt. Pleasant to Pittsburg and return. About midnight of that day he returned to Mt. Pleasant on the train, handing the conductor his return ticket. Before reaching Mt. Pleasant he decided to go to Cookville, a station on the same road, about eight miles east of Mt. Pleasant, and nearer the plaintiff's place of residence." Immediately on the arrival of the train at Mt. Pleasant "he went to the ticket office and the window where tickets were usually sold, to purchase a ticket to Cookville. He had previously bought tickets there." The plaintiff states that he "hailed and knocked on the window, put his head over the window, and looked into the room, but there was no one there to sell tickets," and therefore he could get none. The plaintiff found the ticket "agent on the car unloading baggage, and told him he wanted to purchase a ticket. He replied that he would sell him one. The conductor was near with his lantern. The agent was engaged some minutes about the baggage, and as he stepped in the door of the depot the conductor gave the signal, and the train started and was under good headway" when plaintiff boarded it, without the ticket. He says that when "the conductor gave the signal for the train to start he requested him to wait a moment to enable him to get the ticket." But "he made no reply, and after I had got on the train and the train had got a short distance from Mt. Pleasant the con-

ductor came to me and demanded a ticket. I told him I had no ticket; that I tried to get one in Mt. Pleasant and the office was not open, at least there was no person in the office to sell tickets. I then tendered said conductor 25 cents. He took it and handed it back to me, and said I had to pay 30 cents. I told him 25 cents was all the money I had. He said if I did not pay 30 cents he would put me off. I tried to borrow the other 5 cents from a friend on the train, but he did not have it. The conductor then stopped the train and required me to get off. This was about one or one and a half miles from Mt. Pleasant, and about six and one-half miles from Cookville. It was between midnight and day. The night was very dark and rainy, and I had to walk through rain and water to get to my place of destination, which I did that night. I had often bought tickets from Mt. Pleasant to Cookville for the sum of 25 cents. That was the fare when a passenger purchased a ticket. There were quite a number of passengers, and I was put off in their presence. The conduct of said conductor greatly mortified my feelings, as he spoke short and rough to me. If there had been any person in the ticket office authorized to sell tickets when I first applied for a ticket I had plenty of time to have got a ticket before the train started."

Such is the case made by the testimony of the appellee. The evidence of the conductor and ticket agent contradicts the plaintiff in important particulars. They both testify that he had ample time within which to procure a ticket. The testimony being in this conflicting state as to whether appellants allowed the appellee sufficient time and opportunity to procure a ticket, and treating the court's findings upon the controverted issue, which is supported by the evidence, as the verdict of a jury should be under similar circumstances, it only remains for this court to determine the legal effect of the case made by plaintiff—one where it is shown he had no opportunity to purchase a ticket at the company's office within the time the office is required by law to be kept open prior to the departure of the trains, because there was no person in the office authorized to sell him a ticket.

We think it is clear that in this case the right of the conductor to demand 4 cents a mile from appellee, and to refuse that tendered by him (3 cents a mile), depends upon whether ample opportunity was afforded appellee within the time the office was kept open under the statute to purchase a ticket at Mt. Pleasant. Unless this latter fact existed, the law protected him as a passenger against the contingency of paying the higher rate of fare—4 cents.

It is not made to appear in this case that the company failed to comply with section 9 of article 4258b, Sayles' Civil Statutes, in not keeping its office in fact open half an hour prior to the departure of the train. This, it is presumed, was done. Nor are we required to decide the effect of the statute, when invoked by a passenger already on the train, and who endeavors to procure a ticket at that office or station

for a point beyond it, and fails, because it is not then open, although it may have been kept open for half an hour prior to the departure of the train.   But the case presents the question, whether the compliance with the statute in keeping the office open for the prescribed time will dispense with the necessity for having an agent of the company, or some person authorized to sell tickets, in the office during that time. To state the question is to answer it.

The language of the article cited does not require that an agent or any person shall be in the office for that purpose, but the leading object of the law would be wholly defeated when it is kept in view that the proper construction of it is, that the law was intended to give every reasonable facility and opportunity to purchase tickets to those who, as passengers, desire and seek to do so.  No discussion whatever°is necessary to show that such opportunity is not afforded where the passenger applies in time to purchase one, and no agent or person authorized to sell tickets is found in the office.

Nor do we believe that the fact that the agent, at the time the application was made to purchase the ticket, was engaged in the performance of some other duty for the company constitutes any defense whatever, where the discharge of such other duty, although it may be in the line of the agent's service, has the effect to deprive a passenger, who is himself without fault, of ample opportunity to procure his ticket. Hence the fact in this case that the agent, while the train stopped at Mt. Pleasant, was engaged in unloading baggage from the car, and according to the plaintiff's evidence did not finish in time to sell him the ticket, would be no defense.   The law was obviously intended to require that during the time the office was directed to be kept open some one should be in it authorized to sell tickets.   If during that time the agent saw proper, or was required, to discharge some other duty, this could only be done, under a proper construction of the act, at such time as did not interfere with the leading purpose of the law, which was, as we have said, to give ample facilities to the passenger to procure his ticket.   It is only when these conditions exist, and the passenger is himself dilatory or at fault, and fails to purchase his ticket, that there can be lawfully exacted by the conductor the payment of 4 cents a mile.

From these views it necessarily results that the appellee was lawfully on the passenger train, and could not have been required under the law to pay the amount demanded by the conductor.   The conditions did not exist authorizing the conductor to eject him from the car.   This having been done wrongfully, his right to recover is evident. .

We can assign no reason for holding the judgment excessive under the facts.   In the case of Railway v. McClanahan, 66 Texas, 530, a judgment for $500 was permitted to stand for ejecting a passenger from the car who had failed, like the appellee, to purchase a ticket.   He was put off at night, six or seven miles from Cookville, while it was

raining. The conductor, he testifies, "spoke short and rough" to him, and "greatly mortified" his feelings. These facts were believed by the court below to be sufficient to authorize a decree for $200. We have no means by which we can determine that it is excessive.

We think that the judgment should be affirmed.

*Affirmed.*